**LAW OFFICES OF DAVID CARLEBACH, ESQ.**
David Carlebach, Esq.
Ira Abel, Esq. (Of Counsel)
55 Broadway
Suite 1902
New York, NY 10006
Tel: (212) 785-3041
Fax: (347) 472-0094
Email: david@carlebachlaw.com

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

————————————————————————x
                                   :

In re:                              :       Chapter 7
                                   :

**Jacob Fetman**                :       Case No. 15-43716-NHL
                                   :

              **Debtor**.    :
————————————————————————x
**Aish Hatorah New York, Inc.,**     :
                                   :

              **Plaintiff,**    :
                                   :

**-against**                      :       Adv. Proc. No. 16-01064-NHL
                                   :

**Jacob Fetman,**               :
                                   :

              **Defendant.**   :
————————————————————————x

## ANSWER, AFFIRMATIVE DEFENSES AND
## COUNTERCLAIM OF JACOB FETMAN

      Jacob Fetman (the "Defendant"), by and through his counsel, the Law Offices of David

Carlebach, submits this Answer to the complaint, dated March 14, 2016 (ECF Adv. Doc. No. 1,

the "Complaint") of Aish Hatorah New York, Inc. (the "Plaintiff") states and alleges as follows:

## ANSWERS TO BACKGROUND

1.      Defendant (a) denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 1 of the Complaint and (b) asserts that the allegation calls for a legal conclusion as to which no answer is required.

2.      Defendant (a) denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 2 of the Complaint, (b) asserts that the allegation calls for a legal conclusion as to which no answer is required, (c) denies to the extent that the Defendant is entitled to a jury trial and does not consent to jury trial in Bankruptcy Court and (d) admits that the proceeding is core.

3.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 3 of the Complaint.

### ANSWERS TO FACTS

4.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 4 of the Complaint.

5.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 5 of the Complaint.

6.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 6 of the Complaint.

7.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 7 of the Complaint.

8.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 8 of the Complaint.

9.      Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 9 of the Complaint.

10.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 10 of the Complaint.

11.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 11 of the Complaint.

12.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 12 of the Complaint.

13.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 13 of the Complaint.

14.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 14 of the Complaint.

15.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 15 of the Complaint.

## ANSWERS TO OBJECTION TO DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)

16.     Defendant restates and incorporates by reference its answers set forth in paragraphs 1 through 15 above.

17.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 17 of the Complaint.

18.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 18 of the Complaint.

19.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 19 of the Complaint.

20.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 20 of the Complaint.

## ANSWERS TO OBJECTION TO DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

21.     Defendant restates and incorporates by reference its answers set forth in paragraphs 1 through 20 above.

22.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 22 of the Complaint.

23.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 23 of the Complaint.

24.     Defendant denies knowledge and information sufficient to form a belief as to the truth of the matters alleged in paragraph 24 of the Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

25.     Defendant denies that the Court has *in personam* jurisdiction over the Defendant.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

26.     Defendant asserts that process was insufficient.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

27.     Defendant asserts that service of process was insufficient.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

28.     The Plaintiff fails to state a cause of action.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

29.     Plaintiff is barred from recovering by the doctrine of laches.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

30.     The Plaintiff's actions are barred under the doctrines of estoppel and of *res judicata*.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

31.     Plaintiff's claims for relief are barred by all applicable state and federal statutes of limitations.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

32.     Plaintiff's claims for relief are barred, in whole or in part, by reason that Plaintiff has failed to plead fraud on the part of Defendant with particularity as required by Fed. R. Civ. P. 9(b) and Fed. R. Bankr. P. 7009(b).

### AND FOR A NINTH AFFIRMATIVE DEFENSE

33.     The Plaintiff's Complaint contains a claim for relief which, pursuant to *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) *reh'g denied*, 132 S. Ct. 56, 180 L. Ed. 2d 924 (U.S. 2011), implicates only private rights. Consequently, the Bankruptcy Court has no authority to issue final judgments over those private rights without the Defendant's consent.

34.     The Defendant reserves his right to a jury trial before the District Court, does not consent to a jury trial before the Bankruptcy Court and does not consent to the entry of final orders by the Bankruptcy Court.

### AND FOR A TENTH AFFIRMATIVE DEFENSE

35.     The Defendant hereby gives notice that he intends to rely upon such other and further defenses as may become available or apparent during the discovery process in this proceeding, and hereby reserves his right to amend his Answer to assert any such defenses. Defendant's assertion of the above defenses is not intended and should not be deemed or construed to alter or shift any burden of proof Plaintiff may have in connection with the matters alleged in the Complaint.

### AS AND AND FOR A FIRST COUNTERCLAIM

36.     Defendant restates and incorporates by reference its answers set forth in paragraphs 1 through 36 above.

## BACKGROUND TO FIRST COUNTERCLAIM

37.     The Defendant and Rabbi Yitz Greenman, Plaintiff's Executive Director, belong to the same close-knit orthodox Jewish community, of which Rabbi Greenman is a prominent and influential member.

38.     As part of his long-standing customary duties while working for Plaintiff, Defendant was responsible for negotiating and executing leases for office space on Plaintiff's behalf. In the course of his employment with Plaintiff, in 2012, Defendant negotiated and executed a four year extension of a lease for office space located at 150 West 46th Street, New York, New York. Plaintiff had occupied this space since 2002, and absent an extension, the lease was scheduled to expire on May 31, 2013. At the time Defendant extended the lease on behalf of Plaintiff, Defendant had no knowledge that Plaintiff might seek to relocate, or that Rabbi Greenman would later find the extension to be in any way objectionable.

39.     In or around August 2013, Rabbi Greenman informed Defendant that he wanted to relocate Plaintiff's offices. Rabbi Greenman became furious when he discovered that Plaintiff had extended the lease until 2016. While not legally obligated to do so, the landlord agreed not to enforce the full lease extension so long as Plaintiff occupied the premises until May 14, 2014.

40.     Since the original lease had been due to expire on May 31, 2073, at which time, to Defendant's knowledge, there had been no plans for Plaintiff to relocate, Plaintiff would likely have signed a lease of extension of at least one year in any event.

41.     Notwithstanding the landlord's willingness to work with Rabbi Greenman and resolve the situation in a manner favorable to Plaintiff, Rabbi Greenman remained angry with

Defendant over the lease extension. Rabbi Greenman demanded, unfairly, and with no legal or other justification, that Defendant personally pay Plaintiff's rent while Plaintiff continued to occupy the premises. Defendant understandably refused to comply with Rabbi Greenman's outlandish demand for payment (such lease dispute, the "Underlying Dispute").

42.      Defendant's daughter was to be married on November 18, 2013. This fact was known to Rabbi Greenman and others. In early October 2013, when wedding invitations had been issued and knowledge of the wedding was widespread in Defendant's community, Rabbi Greenman threatened Defendant to have Defendant arrested and tell Defendant's daughter's fiancé and the fiancé's family that the Defendant was a "thief" unless Defendant agreed to submit the Underlying Dispute to Rabbi Dovid Cohen. Defendant reasonably believed that Rabbi Greenman would act on his threat to spread malicious and injurious lies concerning the Defendant to Defendant's daughter's fiancé's family and seek to have him, however wrongfully, arrested. Defendant further reasonably believed that if Rabbi Greenm        an, a prominent and influential figure in Defendant's community, told his daughter's fiancé's family that the Defendant was a "thief," then his daughter's wedding would be jeopardized and likely cancelled.

43.      According to Jewish tradition, weddings call for seven nights of celebration. Thus, Defendant's daughter's wedding celebrations were scheduled through November 25, 2013. During this time, members of Defendant's family were staying with him in his home, and many friends, wedding guests and well-wishers surrounded Defendant and his family. Before and during these wedding celebrations, Rabbi Greenman continued to threaten Defendant, and demanded that Defendant provide further personal financial records to Rabbi Greenman and Rabbi Cohen. Rabbi Greenman also accused Defendant of not complying with Rabbi Cohen's document production demands, further evidencing that Defendant, who was unrepresented and is

not a lawyer, was continuing to make objections to the fairness of Rabbi Cohen's handling of the Underlying Dispute. During the time period on and around his daughter's wedding celebrations, Defendant was, to Rabbi Greenman's knowledge, even more vulnerable to Rabbi Greenman's threats.

44.     Accordingly, Defendant, who was placed under extreme pressure by Rabbi Greenman's vile and unlawful threats, believed that he had no alternative but to bow to Rabbi Greenman's demands and to let Rabbi Cohen attempt to resolve the Underlying Dispute.

45.     Rabbi Greenman, Rabbi Cohen, nor any other person told Defendant that by signing the purported arbitration agreement, the Defendant was waiving his rights to have a court hear and determine the Underlying Dispute, or that any decision by Rabbi Cohen could be confirmed and entered as a Judgment in this Court. Contrary to the Plaintiff's papers and the documents issued by Rabbi Cohen, at no time did Defendant agree that anything other than the Underlying Dispute could be considered by Rabbi Cohen. Defendant did not agree that any allegations about the potential misuse of Plaintiff's funds, or any matter other than the lease dispute, were part of the Underlying Dispute.

46.     The dispute resolution "process" used by Rabbi Greenman and Rabbi Cohen with respect to the Underlying Dispute was not a formal Rabbinical Court, or Beis Din. Instead, Rabbi Cohen conducted sham proceedings infected by misconduct, partiality and irrationality. When Rabbi Cohen became aware that Defendant was objecting to the fairness of the proceedings and feared that Defendant was preparing to seek relief from a court of competent jurisdiction to stay the proceedings, Rabbi Cohen vindictively issued a pre-emptive decision before Defendant had time to act. Rabbi Cohen and Rabbi Greenman are apparently seeking to make Defendant a scapegoat for Rabbi Greenman's abysmal management of Plaintiff and intentional misconduct as

Plaintiff's Executive Director. Plaintiff and Rabbi Cohen now seek to take every last cent and every piece of properly from Defendant and his family, as well as from a separate legal entity not party to any arbitration agreement (namely, Merkaz - The Center, Inc.), on the basis of a deeply flawed process that fails to pass muster under CPLR Article 75.

47.     Rabbi Cohen and Rabbi Greenman had many *ex parte* communications about the Underlying Dispute. Indeed, Rabbi Cohen refused to communicate directly with Defendant and issued most of his "directives" and communications through Rabbi Greenman. Defendant has reason to believe such *ex parte* communications between Rabbi Cohen and Rabbi Greenman were improper substantive communications about the Underlying Dispute and that Rabbi Greenman and Rabbi Cohen colluded to reach a predetermined, unlawful and unfair resolution of the Underlying Dispute.

48.     Rabbi Cohen has had and, on information and belief, continues to have, a material financial relationship with both Plaintiff and Rabbi Greenman. At the very least, Plaintiff and Rabbi Greenman from time to time rented space in Rabbi Cohen's synagogue for various events. Rabbi Cohen improperly failed to disclose to Defendant his conflict of interest and partiality. The submission of the Underlying Dispute to Rabbi Cohen was falsely predicated on the independence and impartiality of Rabbi Cohen.

49.     Rabbi Cohen wrongly refused to permit Defendant to present his case and cross-examine witnesses when hearing the Underlying Dispute. Among other misconduct, Rabbi Cohen wrongfully refused to accept written submissions or oral argument by Defendant in which he wished to present certain pertinent defenses to Rabbi Greenman's accusations. Defendant's defenses to Rabbi Greenman's baseless accusations included that certain transactions in question had Rabbi Greenman's full knowledge and approval, and that Defendant's alleged improper

conduct was in fact consistent with Plaintiff's standard operating procedures and was identical to the conduct of Plaintiffs' other employees including, among others, Rabbi Greenman. Rabbi Cohen improperly refused to permit Defendant to present these defenses, or cross-examine witnesses, in violation of CPLR Article 75.

50.     After meeting with Rabbi Cohen and Rabbi Greenman on merely two occasions that were in the nature of preliminary or case management hearings, Defendant became gravely concerned about Rabbi Cohen's apparent misconduct in handling the Underlying Dispute and his evident bias in favor of Plaintiff. Consequently, Defendant, who up to that point in time had not been represented by an attorney, retained counsel. Rabbi Cohen retaliated by wrongfully issuing the Final Award before the Underlying Dispute (or any dispute) was finally submitted and without genuine notice to Defendant or Defendant's counsel. Indeed, Rabbi Cohen likely intended that Defendant receive insufficient notice. Such actions wrongfully deprived Defendant of his right to counsel in this matter under CPLR Article 75 and other applicable law.

51.     Almost every aspect of Rabbi Cohen's handling of the Underlying Dispute was highly irregular and prejudicial to Respondent. For example, in dealing with Plaintiff's Claims that Defendant had stolen Plaintiff's funds, Rabbi Cohen directed Defendant to prove the legitimate sources of all his assets rather than examine Plaintiff's books and records to determine whether any funds were in fact missing. Such a direction was oppressive, unreasonable and irrational. It was also practically very difficult, if not impossible, to comply with because it required seventeen years of bank and other financial records, many of which are no longer readily available. When Defendant failed to produce the documents, Rabbi Cohen concluded that Defendant was being "uncooperative."

52.    Rabbi Cohen also required Defendant to pay for the services of a forensic accountant. The parties agreed with Rabbi Cohen that Defendant would pay $20,000 to retain a forensic accountant and other relevant professionals. Notwithstanding that agreement, in a matter of a few weeks, Defendant was told that the bill was already over approximately $100,000, and that it was Defendant's sole responsibility to pay the bill, whatever the final amount.

53.    With respect to the Underlying Dispute, on October 31, 2013, Rabbi Cohen irrationally decided that Defendant would be personally liable for the lease extension that Defendant reasonably and diligently executed in the course of his employment with Plaintiff, notwithstanding that Plaintiff continued to occupy and use the premises. Curiously, Rabbi Cohen omitted this decision from the Final Award.

54.    Even more troubling, Rabbi Cohen directed Defendant to place all of his funds into the attorney escrow account of Plaintiff's counsel. Prior to Rabbi's Cohen's Award, Defendant deposited approximately $500,000 in the escrow account. Counsel has refused to provide an accounting of these funds and refused, in breach of its fiduciary duty to Defendant, to return the funds when directed to do so by Defendant prior to Rabbi Cohen's decision.

55.    On December 9, 2013, Rabbi Greenman, Plaintiff's counsel, Defendant and Daniel Stein and/or Paul J. Devlin,[1] met with Rabbi Cohen and the forensic accountant for a settlement conference. At the settlement conference, Rabbi Greenman baldly asserted that Defendant had stolen $20 million from Plaintiff during the course of Defendant's employment with Plaintiff. Defendant flatly rejected this allegation as being self-evidently absurd. Defendant has never had such a sum of money, which amounts to many multiples of Defendant's net worth

---

[1] Mr. Stein and Mr. Devlin, attorneys at Richards Kibbe & Orbe LLP, represented the Defendant in litigation in the Supreme Court of the State of New York, County of Kings, captioned *In re Aish Hatorah New York, Inc. Petitioner*, *vs Jacob Fetman a/k/a Yaakov Fetman, Respondent*, under Index No. 02205712013. Upon information and belief, Mr. Stein is no longer with Richards Kibbe & Orbe LLP as he is no longer listed on the firm's web site.

created over a lifetime of hard work. The forensic accountant did not support Rabbi Greenman's accusation at the December 9, 2013 meeting while Defendant was present.

56.     Subsequent to the meeting on December 9,2073, Mr. Stein and/or Mr. Devlin continued unsuccessfully to confer with Plaintiff's counsel to resolve the Underlying Dispute and discuss the unfair procedure established by Rabbi Cohen and Rabbi Greenman. With good reason to be fearful that Plaintiff and Rabbi Cohen would wrongly seek to take Defendant's property and funds in escrow, and to preserve the status quo for a ruling by a court of competent jurisdiction, on December 13, 2013, Defendant revoked a power of attorney he had granted to Rabbi Cohen and Plaintiff's counsel with respect to certain real property.[2] Also on December 13, 2013, Mr. Stein and/or Mr. Devlin wrote to Plaintiff's counsel to demand the return of the escrowed funds, an accounting of the escrowed funds, and directed Plaintiff's counsel not to otherwise transfer, encumber or use the funds.

57.     On December 17, 2013, Rabbi Greenman requested that Rabbi Cohen issue a ruling in the Underlying Dispute in favor of Plaintiff and against Defendant in the amount of $20 million. Defendant's undersigned counsel received an e-mail at 3:47 p.m. (New York time) from Rabbi Greenman with the text of Rabbi Greenman's request to Rabbi Cohen for a ruling. At this time, undersigned counsel was, to the knowledge of Plaintiff, in California on unrelated business.

58.     Rabbi Cohen issued his decision at 4:22 p.m. (New York time), a mere 45 minutes after Rabbi Greenman's request for a ruling was relayed to Defendant's counsel. Curiously, however, the fax header of Rabbi Cohen's decision that was presumably sent to Plaintiff records the time as being 7:51 p.m. on the prior day, December 16, 2013. Whatever the

---

[2] 4305 10th Avenue, Brooklyn, NY, 11219, 4301 10th Avenue, Brooklyn, NY, 11219, 1723 Ocean Avenue, Brooklyn, NY, 11230, 1739 Ocean Avenue, Brooklyn, NY, 11230, 1743 Ocean Avenue, Brooklyn, NY, 11230, 750 Washington Ave., Brooklyn, NY, 11238 and 1677 President St., Brooklyn, NY, 11213 (collectively, the "Real Property").

true timing and provenance of Rabbi Cohen's handwritten decision, it was unquestionably issued with unseemly haste in circumstances in which Defendant had no opportunity to oppose Rabbi Greenman's request or, perhaps reflecting the true reason for Rabbi Cohen's precipitous decision, seek emergency relief from this Court for a stay to be issued against Rabbi Cohen. Such action by an arbitrator in itself amounts to gross misconduct and warrants vacatur of the award (now on appeal before the Appellate Division of the Supreme Court of the State of New York for the Second Judicial Department).

59.    In his decision, in language plainly cribbed from Rabbi's Greenman's request for a ruling, Rabbi Cohen stated that Defendant admitted to stealing money from Plaintiff. Defendant categorically and unequivocally made no such admission to Rabbi Cohen, nor did he make any written or verbal statement that could have been reasonably misconstrued as such an admission. The only reasonable explanation of this is that Rabbi Cohen committed misconduct by reaching a decision unsupported by any evidence and without giving Defendant the opportunity to be heard.

60.    In his decision, Rabbi Cohen stated that a forensic accountant had, based on the review of "some documents" had "notified us" that "at least $2.4 million was stolen by Mr. Fetman." The Defendant was not informed of this alleged determination prior to Rabbi Cohen's decision. To the contrary, all of Defendant's counsel's discussions with the forensic accountant related to the fact that the forensic accountant's analysis was not complete, and that the accountant wanted to give Defendant an opportunity to address any preliminary findings. Defendant was therefore improperly denied the opportunity to be heard with respect to the alleged determination and the opportunity to cross-examine the forensic accountant who purportedly made this determination. Defendant believes that in fact no such determination was made by the forensic accountant.

61.    In his decision, Rabbi Cohen also stated-without providing any evidence whatsoever to Defendant or affording the Defendant the opportunity to be heard-that it was likely that Defendant stole the astronomical sum of approximately $20 million "over the years."

62.    In addition to the many defects identified herein, the award of $20 million to Plaintiff is irrational on its face and has no basis in fact or law. Even Rabbi Cohen himself wrote only that the amount Plaintiff allegedly misappropriated was *"approximately* $20,000,000" (emphasis added).

63.    Rabbi Cohen also exceeded whatever powers he had to decide the Underlying Dispute by determining that a separate legal entity called Merkaz "is obligated to return to [Plaintiff] assets and fungibles valued at $20,000,000." Rabbi Cohen also wrongly directed that Plaintiff is entitled to investment funds held in Merkaz's name. Merkaz was not party to, or even mentioned, in the purported arbitration agreement, and Rabbi Cohen's decision to "pierce the corporate veil" was made without any rational or reasoned basis. Moreover, Rabbi Cohen also purported to direct Plaintiff to take title to certain real estate located in Kings County. Title to certain of those properties is not held by Defendant, while others are in Defendant's name but are in fact owned by others, and all were purchased with Defendant's, and not Plaintiff's, funds. Thus Rabbi Cohen exceeded whatever powers he had with respect to the Underlying Dispute by directing their transfer to Plaintiff. Furthermore, Rabbi Cohen directed that Defendant's assets should be "confiscated," a punitive act beyond an arbitrator's powers.

64.    By emergency order to show cause, filed on December 24, 2013, Plaintiff sought, among other things, an order confirming the arbitration award and a temporary restraining order against the Defendant, restraining him from affecting the Real Property.

65.     Justice Demarest ultimately granted the petition in part and denied it in part. Defendant promptly appealed the decision to the Appellate Division of the Supreme Court of the State of New York for the Second Judicial Department, where it remains pending.

## THE CLAIM

66.     On November 13, 2015, the Plaintiff filed a proof of claim (No. 1 on the Claim Register maintained by the Clerk of the Court, the "Claim") in the amount of "$20,000,000 plus accrued interest per judgment." A copy of the Claim is annexed hereto as Exhibit 1.

67.     The Claim asserts an interest in real property in Kings County, Funds held in escrow, and the basis for perfection is alleged to be a "Judgment Lien, Escrow Agreement/Order" with an annual interest rate of nine percent (9%) per annum.

68.     The Claim is listed as having 43 pages. While it does in fact have 43 pages when printed, twenty-two (22) of them are blank.

69.     The Claim has attached to it a judgment, dated October __, 2014 (the "Judgment"). The Judgment entitles the Plaintiff to "have execution," but does not provide any written or recorded basis for a lien against any real property (which, in any event is unspecified as to address, block or lot number), much less the Real Property.

70.     Moreover, the Judgment does not provide any description of the escrow account, amount or location. It does contain a document, dated December 19, 2013, signed by Rabbi Dovid Cohen (ECF Doc. No. 1-1 at page 28) that mentions, in passing, (a) an escrow account of Ober Kaler alleged to contain $500,000 and (b) a list of the Real Property,[3] but does not otherwise identify any lien against those estate assets.

---

[3] To the extent that Plaintiff has obtained possession, custody or control of any funds or other assets owned by the Defendant or the estate, and to the extent that the Trustee declines to seek recovery of such assets, Defendant reserves all rights to amend this Answer to add a counterclaim for an avoidance action under 11 U.S.C. §§ 544 – 548.

## **BASIS FOR OBJECTION**

71.     By this Objection, the Defendant seeks entry of an order pursuant to 11 U.S.C.

§502(b) and Bankruptcy Rule 3007 (and, to the extent it may become applicable, Bankruptcy

Rule 9019) disallowing, expunging, reclarifying, reclassifying, reducing and/or otherwise

modifying the Claim.

72.     The Defendant objects to the Claim for the following reasons:

a.     No proof of perfection of the alleged security interest is provided.

b.     No description of the alleged collateral is provided.

c.     Because of a. and b. above, it is unclear whether the Claim is secured or

unsecured.

d.     The Claim does not support the Plaintiff's reliance on the amounts alleged

as owing by the Defendant and accordingly no liability exists with respect to the Claim.

e.     The Claim is unenforceable against the Defendant.

f.     The Claim seeks payment for unmatured interest.

g.     The Claim seeks interest, costs, charges, and/or expenses in amounts in

excess of the amounts allowed under the Bankruptcy Code.

h.     The Claim seeks multiple recoveries for a single liability against the

Defendant.

i.     To the extent that the Defendant is liable for the amounts set forth in the

Claim, the amounts set forth are incorrect.

j.     The Claim was filed either without supporting documentation or without

sufficient documentation or alleged facts to support the Claim. As a result, the Defendant

cannot determine (i) whether the Defendant is liable for the Claim and/or (ii) the amount

of the Claim.[4] Therefore, the Claim is not *prima facie* valid. Because the Claim is not *prima facie* valid, the Defendant hereby objects to it and requests that an order be entered disallowing and expunging the Claim in its entirety.

k.    The judgment on which the Claim is based is not final and cannot therefore be enforced.

## LEGAL BASIS FOR REQUESTED RELIEF

73.    Section 502(a) of the Bankruptcy Code provides, in relevant part, that a proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Upon the filing of an objection by such a party in interest that contests one or more of such claim's fundamental allegations, the burden to demonstrate the validity of the claim shifts to the claimant. *See, e.g.*, *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

## AUTHORITY TO SETTLE OR COMPROMISE THE CLAIM

74.    The Defendant respectfully request that, to the extent that it and the Plaintiff can resolve or otherwise settle this litigation, that the Defendant be authorized to provide notice of such settlement by notice of proposed order pursuant to Local Bankruptcy Rule 2002-1 without further hearing under Bankruptcy Rule 9019.

## RESERVATION OF RIGHTS

75.    The Defendant expressly reserves the right to amend, modify or supplement this Answer and to file additional objections to the Claim notwithstanding the relief requested in this

---

[4] To comply with the requirements for filing a claim, "a claimant must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is *prima facie* valid pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure." *In re Planet Hollywood Intl*, 247 B.R. 391, 395 (Bankr. D. DE. 2001).

Answer. Should one or more of the grounds for objection stated in this Answer be denied, the Defendant reserves his right to object on other grounds or on any other or additional grounds that he discovers.

WHEREFORE, the Defendant respectfully requests that judgment be entered (a) for the Defendant dismissing the Complaint, (b) expunging the Claim and (c) for such other relief as is just and proper, for all of which no other request has been made to this or any other Court.

Dated: New York, New York
      June 7, 2016

**LAW OFFICES OF DAVID CARLEBACH**
*Attorneys for the Debtor*

By: _s/ Ira Abel_
      David Carlebach, Esq.
      Ira Abel, Esq. (Of Counsel)
55 Broadway, Suite 1902
New York, New York 10006
(212) 785-3041
david@carlebachlaw.com
ira@carlebachlaw.com

Index of Exhibits

Exhibit 1: Proof of Claim